UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY NEWELL,

                Plaintiff,                       Case No. 06-12668

vs.                                        Marianne O. Battani
                                        United States District Judge

KEVIN ESTES and ROSETTUS WEEKS,

                                        Steven D. Pepe
                                        United States Magistrate Judge

                Defendants.

_____/

**REPORT AND RECOMMENDATION GRANTING
DEFENDANT WEEKS' MOTION TO DISMISS (DKT. #25)**

       Plaintiff, Ricky Newell, an inmate in state custody and currently housed at the Richard A. Handlon Correctional Facility, filed this *pro se* 42 U.S.C.§ 1983 action on May 19, 2005.  The events giving rise to Plaintiff's Complaint took place at the Huron Valley Center ("HVC").  Named as Defendants are Kevin Estes, a former Forensic Security Office at the HVC and Rosettus Weeks, a former Director of HVC.

       On November 7, 2008, Defendant Weeks filed his Motion to Dismiss based on Plaintiff's failure to exhaust administrative remedies (Dkt. #35).  All pre-trial proceedings have been referred in accordance with the authority conferred under 28 U.S.C. §636(b) (Dkt. #13).  For the reasons indicated below, it is recommended that Defendant Weeks' motion be GRANTED.

**I.      BACKGROUND**

1

The Complaint and exhibits allege that, on May 24, 2004, defendant Kevin Estes struck Plaintiff on the jaw with a clenched fist, while Plaintiff was incarcerated and undergoing psychiatric treatment at the HVC.  Plaintiff claims that the assault was unprovoked and that he fell unconscious to the floor.

A prisoner rights advocate subsequently spoke with Plaintiff, and the Michigan Department of State Police was asked to investigate the incident.  The State Police allegedly informed Plaintiff that they did not believe his version of the incident because his recollection of the incident did not correspond to the report that he made on the day of the incident.[1] Plaintiff alleges that, in October of 2005, he learned that the State Police had declined to prosecute Estes.  He and his sister then attempted without success to acquire public records and documentation of the assault.  On February 20, 2006, Plaintiff filed a grievance about the assault, but his grievance was rejected as untimely.  Plaintiff filed another grievance on April 8, 2006, which was rejected as untimely and for failure to provide a valid reason for the delay.

The pending complaint was filed in the Western District of Michigan on May 19, 2006. United States District Judge Gordon J. Quist dismissed two defendants (Roger Smith and Cynthia Kelly) and transferred the case here (Dkt. #1).

The complaint alleges that Defendant Estes violated Plaintiff's right to a safe environment and that Defendant Rosettus Weeks failed to protect Plaintiff from Estes.  Plaintiff seeks declaratory, injunctive, and monetary relief for physical and emotional abuse.

---

[1]Plaintiff alleges that he does not recall what he said after the incident because he was injected with 100 mg of Thorzine at the time.  He also alleges that he has been unable to acquire a copy of the report that he made of the incident.

2

On August 14, 2006, this Court entered an Order of Dismissal (Dkt. #3) of this case and Judgment in favor of Defendants against Plaintiff (Dkt. #4). This Court subsequently reversed itself based on the Supreme Court's holding in *Jones v. Bock*, 549 U.S. 199 (2007), that "failure to exhaust is an affirmative defense under the [Prison Litigation Reform Act], and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." Consistent with that holding, this Court determined that Sixth Circuit precedent on which the Court *sua sponte* summarily dismissed Plaintiff's complaint was a mistaken interpretation of the Prison Litigation Reform Act. Accordingly, on January 3, 2008, the Court granted Plaintiff's motion for relief from judgment and reopened this case (Dkt. #11).

Defendant, Rosettus Weeks, requests that the Court dismiss the complaint based on Plaintiff's failure to exhaust his administrative remedies as he is required to do under the Prison Litigation Reform Act. The pending motion is based on this Court's earlier ruling that Plaintiff had failed to show exhaustion. Now that the Supreme Court requires that the Defendant raise this issue rather than the Court, Defendant is now raising that issue.

**II.    ANALYSIS**

    **A.    The Legal Standards**

    1. Motion to Dismiss

Fed. R. Civ. P 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even in everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[W]hen ruling on a defendant's

3

motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1965 (2007), *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations," *Twombly*, 127 S.Ct. at 1965 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

2. Exhaustion Requirements

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust "such administrative remedies as are available." As noted above the PLRA requires a prisoner to follow the state corrections system's procedures and *properly* exhaust all administrative remedies before he may bring a cause of action in federal court. *Woodford v. Ngo*,126 S. Ct. 2378 (2006). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386. The *Woodford* Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA

4

did not create such a toothless scheme.

*Id*. at 2388.  Thus, an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement.

Prisoners at MDOC facilities are given the right to "[seek] redress for alleged violations of policy and procedure or unsatisfactory conditions," but prisoners making grievances must follow certain rules and deadlines.  PD Preamble.  These requirements are laid out in MDOC Policy Directive, Prisoner/Parolee Grievances (the "Policy Directive" or "PD").

In *Jones*, the Supreme Court held that the PLRA does not require that a prisoner name all of the defendants in his grievances.  *Jones*, 127 S. Ct at 922.  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 923.  *Jones*, however, was based on a previous version of MDOC Policy Directive 03.02.130, Prisoner/Parolee Grievances,  that did not require that prisoners list  names of potential defendants in their grievances.  *Id.* at 916 (discussing policy effective November 1, 2000).  Yet, that Michigan policy directive was changed prior to Plaintiff filing his Complaint or grievances.   Yet, that policy directive was changed effective December 19, 2003, prior to the May 24, 2004, Estes assault on Plaintiff that Defendant Weeks is alleged not to have prevented.  It is this December 19, 2003, MDOC Policy Directive 03.02.130 on Prisoner/Parolee Grievances that controls in this case.

Section T. of Policy Directive 03.02.130 requires prisoners to include names of potential defendants in their grievances. (Below).  Paragraph T of the 2003 Policy Directive states:

> Information provided is to be limited to the facts involving the
> issue being grieved (i.e., who, what, when, where, why, how). Dates,

5

times, places, and names of all those involved in the issue being
grieved are to be included.

MDOC Policy Directive 03.02.130 ¶ T (Effective December 19, 2003)

P.D. 03.02.130 had specific administrative procedures that prisoners must follow to
exhaust their administrative remedies.   Prisoners at MDOC facilities are given the right to
"[seek] redress for alleged violations of policy and procedure or unsatisfactory conditions," but
prisoners making grievances must follow certain rules and deadlines. P.D. 03.02.130 ¶ R
requires that, within two business days of becoming aware of a grievable issue, a prisoner must
first make an informal attempt to resolve it, unless he is prevented from doing so by
circumstances outside of his control.  If he is dissatisfied with the result of this attempt, he may
proceed to Step I of the grievance process.  On a form supplied by MDOC, the prisoner must
briefly describe the facts of the issue being grieved. P.D. 03.02.130 ¶ T.  This Step I grievance
form must be filed with a designated Grievance Coordinator at the correctional institution within
five business days of the prisoner's informal attempt at resolution.  P.D. 03.02.130 ¶ X.

If the prisoner is dissatisfied with the Step I response, he may appeal to Step II by
obtaining an appeal form within five business days of the response and submitting the appeal
within five business days of obtaining the form with the Step II Grievance Coordinator of the
correctins faciity.  P.D. 03.02.130 ¶ DD.  The Step II respondent is designated by the Policy
Directive P.D. 03.02.130 ¶ FF.

If the prisoner is still dissatisfied after receiving the Step II response, he may appeal to
Step III using the same appeal form.  The Prisoner Affairs Section, on behalf of the MDOC
Director, is the respondent for Step III appeals.   P.D. 03.02.130 ¶ S allows grievances involving

6

staff brutality or corruption to skip Steps I and II and proceed directly at Step III so long as the grievance is filed in the same five day time limit for a step I grievance.  P.D. 03.02.130 ¶ G 4. states that a grievance may be rejected if it is untimely and there is no valid reason for the delay.

### B.    Factual Analysis

The incident in question here occurred on May 24, 2004.  Plaintiff filed his first grievance about the incident on February 20, 2006.  That grievance and a subsequent one filed on April 8, 2006, were rejected as untimely.  Thus, Plaintiff failed to properly pursue his administrative remedies against Defendant Weeks.  And even though he alleges that, until October of 2005, he was unaware of the decision by the State Police not to seek charges against Estes, he could have pursued administrative remedies against Defendant Weeks while he was waiting for the police to make a decision about his assailant.

Plaintiff does not dispute that he failed to timely exhaust his administrative remedies.  In fact, in his Response to Defendant's Motion to Dismiss, Plaintiff states that he "agrees wholeheartedly with Defendant's arguments on these facts" (Dkt. #28, p. 1).  Plaintiff argues however, that contrary to the Defendant's belief that an untimely Step III grievance leaves an issue unexhausted, *Thomas v. Woolum*, 337 F.3d 720 (6th Cir. 2003) states that:

> Determination that state inmate satisfied exhaustion requirements of Prison Litigation Reform Act (PLRA) was not precluded on grounds that prison officials refused to hear inmate's grievance as untimely filed, inasmuch as inmate gave state officers opportunity to address his complaint, which was all that was required. Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a).

(Dkt. #28, pp. 1-2).  Yet, *Thomas* was subsequently overruled by *Woodford v. Ngo*, 548 U.S. 81 (2006), which holds that an untimely or otherwise improper grievance, even though appealed

through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement. *Id.* at 94-95.

> [P]roper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved.

*Ibid.*

Plaintiff argues further though that *Thomas* was controlling law when he filed this action and that *Woodford* should not be applied retroactively. When a court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 544 (1991). Courts may not "apply a new rule in the case in which it is announced, then return to the old one with respect to all others arising from facts predating the pronouncement. *Id.* Because the Supreme Court applied the exhaustion rule announced in *Woodford* to the *Woodford* litigants, *see Woodford*, 126 S.Ct. at 2393, *Beam* mandates the application of that rule to all cases pending as of June 22, 2006. The present case was pending until August 14, 2006, when this Court entered an Order of Dismissal (Dkt. #3) and Judgment in favor of Defendants against Plaintiff (Dkt. #4). Accordingly, it is proper to apply the holding in *Woodford* to the present case.

Because it is undisputed that Plaintiff failed to properly exhaust his administrative remedies, **IT IS RECOMMENDED** that Defendant Week's Motion to Dismiss be **GRANTED**.

**III.   RECOMMENDATION**

For the reasons stated above, it is **RECOMMENDED** that Defendant Weeks' Motion to Dismiss be **GRANTED**.  The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation.  *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.  A party may file a reply brief within 5 days of service of a response.  The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

DATED: June 15, 2009                                    s/ Steven D. Pepe
Ann Arbor, MI                                          United States Magistrate Judge

9

Certificate of Service

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or

parties of record by electronic means or U.S. Mail on June 15, 2009 .

s/Jermaine Creary

Interim Case Manager